IRENE M. BATON, ADMINISTRATRIX (ESTATE OF
ROSANNA MAIGREY) *v.* EDWARD POTVIN

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued January 5—decided April 13, 1954

*Charles V. James,* for the appellant (defendant).

*Samuel I. Safenovitz,* for the appellee (plaintiff).

WYNNE, J. In essence this action involves a boundary dispute between the parties. It was instituted by the plaintiff as administratrix of the estate of Rosan-

na Maigrey, late of the town of Voluntown, county of New London. The plaintiff alleged that she was in possession of certain premises, that she erected a fence upon the premises and that the defendant destroyed the fence. She sought money damages for the trespass and the destruction of personal property. Before the case came on for trial, the court permitted an amendment which set forth that the plaintiff was executrix of the estate of Rosanna Maigrey and was the devisee of the premises described in the complaint. The court found that the fence had been erected on the boundary line between the parties, entered judgment accordingly, and assessed nominal damages for the trespass.

The court found the following facts: At the time of her death Rosanna Maigrey was the owner of a piece of property in the town of Voluntown which had been purchased by her on March 21, 1921. There were several buildings on the property. The land in the rear sloped downward to the north for a short distance and then a level stretch extended to a stone wall and embankment located immediately to the rear of, and about four or five feet from, the dwelling house now owned by the defendant. It is this level stretch of land which is in dispute.

The defendant purchased his property on August 14, 1948. He claims that the southerly boundary of his land is at the southerly edge of the level stretch of land, while the plaintiff claims it is at the stone wall.

The assignment of errors is directed exclusively to the finding and the court's conclusions thereon. In the first paragraph, error is assigned in the court's failure to find the facts set out in eighteen paragraphs of the draft finding. These, it is claimed, were admitted or undisputed. In the next paragraph of

the assignment of errors, twenty-six paragraphs of the finding are attacked as being found without evidence. The remaining assignments have to do with the court's conclusions and the overruling of the defendant's claims of law. Of these claims of law, only two have to do with adverse possession. The rest are concerned with claims as to title by deed. In the view we take of the case, it is not necessary to discuss title by deed.

When the case came before us, the plaintiff had not filed an appendix to her brief. With regard to title by adverse possession, it is necessary to determine whether the subordinate facts in the finding are supported by evidence. Apparently the plaintiff expected that we would resort to the transcript of testimony filed pursuant to Practice Book, § 404, to determine whether there is any such supporting evidence. Practice Book, § 446 (d), requires an appellee to file with his brief an appendix containing such parts of the evidence on file, but not printed by the appellant, as he deems material to the questions presented. Section 448 provides: "The testimony printed in the appendices will be deemed to embrace all testimony produced at the trial material to the issues on the appeal. . . ." Under these rules, it is incumbent upon the party who desires to sustain a challenged finding of subordinate facts to print as an appendix to his brief all the evidence, not printed by the other party, which he claims supports that finding. It is true that § 448 also provides that "this court may, if sufficient cause appears, consult the transcript of evidence on file to supplement or explain that printed." We will not, however, ordinarily exercise that authority except to reconcile apparent discrepancies or conflicts appearing in the evidence printed in the appendices. Because there had been

an apparent misunderstanding on the part of the plaintiff as to the effect of these rules, we granted her the privilege of filing an appendix to her brief.

From the finding it appears that from the time Rosanna Maigrey purchased her property in 1921 until 1926 she leased it to Joseph Baton and that he used the strip in question for a garden and for household purposes. At that time the property now owned by the defendant was owned and occupied by Everett Whipple. Whipple offered to sell his property to Baton and pointed out the wall five feet from his house as the boundary of his property on the south. From 1875 until 1912, Gilbert Randall and members of his family occupied the premises now owned by the plaintiff. The Randall family considered the top of the stone wall as the northerly boundary of their property. In 1896, George Whipple, a predecessor in title to the defendant, claimed ownership only to the wall. From the time Rosanna Maigrey moved into her premises in 1926 until 1942, she continuously used the level stretch of land as her own, for a garden and for household purposes. This use of the property was under a claim of right, and Everett Whipple, who then owned the land to the north, knew of the use. From 1875 until 1950, neither the defendant nor any of his predecessors in title ever used, was in possession of, or made claim to, the strip now in dispute.

The appendix filed by the plaintiff shows that Franklin E. Robinson, a civil engineer and land surveyor, testified that the defendant's predecessor in title, Whipple, stated to him that the stone wall looked to him as being the boundary between the two parcels in question. Baton, who leased the Maigrey property from 1921 to 1926, testified that when he occupied it he used the strip in question as a

garden. Gilbert H. Randall, another witness called by the plaintiff, testified that when his grandmother lived on the Maigrey property, before Mrs. Maigrey acquired it, she used the strip in question as a garden. From the foregoing evidence it is clear that the trial court had a basis for its finding of subordinate facts relating to adverse possession.

To acquire title by adverse possession, the possession must be of fifteen years' duration. General Statutes § 8314. It must be open, visible and exclusive. A claim of right and an intent by the possessor to use the property as his own are among the essential elements of adverse possession. *Palmieri* v. *Bulkley,* 137 Conn. 40, 42, 74 A.2d 475, and cases cited. These elements were present in the case at bar and were so found. The conclusion of the court that Mrs. Maigrey had title by adverse possession was warranted.

The defendant claims that the plaintiff, having brought this action in a representative capacity, cannot recover, since title to real estate passes to the devisee. It is unnecessary to pass upon this claim, since it is not incorporated in any claim of law submitted by the defendant. Practice Book § 409.

There is no error.

In this opinion the other judges concurred.